TAPIS INTERNATIONAL, Quaid Pindwarawala, and Yakuta Kangroo, Plaintiffs,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Janet Reno, Doris Meissner, and Paul E. Novak, Defendants.

No. CV 98–11807–JLT.

United States District Court, D. Massachusetts.

April 24, 2000.

Maureen O'Sullivan, Kaplan, O'Sullivan & Friedeman, Boston, MA, for Tapis International, Quaid Pindwarawala, Yakuta Kangroo.

Frank W. Hunger, U.S. Department of Justice, Civil Division, Washington, DC, Terri J. Scadron, Karen F. Torstenson, Office of Immigration Litigation, U.S. Dept. of Justice, Civil Division, for Immigration & Naturalization Service, U.S.

## MEMORANDUM

TAURO, District Judge.

At issue is the Immigration and Naturalization Service's ("INS") decision to deny renewal of Plaintiff Quaid Pindwarawala's H–1B immigration status. For the reasons discussed below, Plaintiffs' cross motion for summary judgment is ALLOWED.

### I. BACKGROUND

Plaintiff Tapis International ("Tapis") is an interior design firm, specializing in imported, custom designed floor coverings. As part of the Boston Design Center, it caters to designers, decorators and architects in the New England Area. For the past five years, Tapis has employed Mr. Pindwarawala as its Showroom Manager. His duties in that position include "market share analysis, development of marketing plans, automation of inventory and assisting decorator clients with plans for custom floor designs." Plaintiffs' Memorandum in Support of Summary Judgment ("Pls.' Mem.") at 3. Mr. Pindwarawala's educational background includes a three year Bachelor of Commerce Degree, obtained in his native India; an Associates Degree in Interior Design from Hesser College in New Hampshire; and a Masters Degree in Business Administration from New Hampshire College. Prior to his employment with Tapis, Mr. Pindwarawala also obtained two years of experience managing interior design businesses.

Tapis first sought, and obtained, H–1B immigration status [1] for Mr. Pindwarawala

1. An alien is permitted temporary admission into the United States under an H–1B visa to "performs services in a specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b).

in 1994. Mr. Pindwarawala subsequently married Yakuta Kangroo, who was granted the standard spouse H–4 visa. In October of 1997, Tapis applied to renew Mr. Pindwarawala's H–1B status, and the petition was denied. This denial effects the immigration status of Mr. Pindwarawala and his wife Ms. Kangroo, subjecting them to possible removal from the United States, as well as barring their return for a period of ten years. *See* 8 U.S.C. § 1182(a)(9)(B). Plaintiff Tapis thus seeks reversal of the INS decision denying the H–1B status, while Plaintiffs Pindwarawala and Kangroo seek restoration of their lawful immigration status so that they may complete the green card application process, and to prevent their possible removal from the United States.

Plaintiff Tapis first applied for Mr. Pindwarawala's H–1B visa in November of 1994. That application was granted, providing an H–1B visa for a period of three years. Tapis applied to renew that visa in October 1997, but the application was denied in February of 1998. Tapis appealed the decision, and on August 3, 1998, the INS Administrative Appeals Unit ("AAU") issued a denial. Plaintiffs filed their complaint with this court on September 2, 1998.

## II. ANALYSIS

An H–1B visa allows an alien to obtain temporary admission to the United States to "perform services . . . in a specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b). "To qualify for a nonimmigrant H–1B visa, an alien must satisfy a two-prong test: (1) the position that the alien seeks to occupy must qualify as a 'specialty occupation'; and (2) the alien must [himself] be qualified to perform services in [that] occupation." *Shanti, Inc. v. Reno*, 36 F.Supp.2d 1151, 1153 (D.Minn.1999). The INS has promulgated criteria to assist in determining whether a position is a "specialty occupation" and whether the alien is in fact qualified to

hold that position. *See* 8 C.F.R. § 214.2(h)(4)(iii)(A), (C). Under this regulatory framework, if the employer can demonstrate that a position qualifies as a specialty occupation and that the alien meets the requirements of that job, the INS may extend H–1B status up to a total of six years (assuming the alien was not outside the United States for the year immediately proceeding issuance of the visa). *See* 8 C.F.R. § 214.2(h)(13)(iii)(A).

Where an employer challenges an INS decision to deny H–1B status, that decision is entitled to deference by the district court. Reversal is warranted only where the INS's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Defensor v. Meissner*, 201 F.3d 384, 386 (5th Cir.2000) (citing the Administrative Procedure Act, 5 U.S.C. § 706). *See also Shanti*, 36 F.Supp.2d at 1161–62 (same); *Augat, Inc. v. Tabor*, 719 F.Supp. 1158, 1160 (D.Mass.1989) (citing *Richards v. INS*, 554 F.2d 1173, 1177 (D.C.Cir.1977)). An abuse of discretion takes place where the decision is not supported by substantial evidence or where the determination relies on an improper understanding of the law. *Augat*, 719 F.Supp. at 1160. In addition, it may be an abuse of discretion when the INS fails to follow its own regulations, or where an INS decision is inconsistent with the agency's own precedent. *See Shanti*, 36 F.Supp.2d at 1162.

Here, the INS determined that Tapis could not satisfy its burden of proving that Mr. Pindwarawala's position met the criteria for a specialty occupation. This decision was reached despite the INS's prior grant of H–1B status in 1994. Plaintiffs respond by arguing that this decision constituted an abuse of discretion because it relied upon an improper interpretation of the regulatory guidelines and because the INS provided no explanation for departing from its prior grant of H–1B status. For the reasons discussed below, this court finds that the INS decision constitutes an abuse of discretion.[2]

---

2. Defendants challenge the standing of Plaintiffs Pindwarawala and Kangroo, arguing that

only the employer has standing to challenge the denial of an H–1B application. *See* Defs.'

## A. Meeting the Criteria for a Specialty Occupation

The INS based its denial of Tapis's H–1B renewal on the ground that Mr. Pindwarawala's position does not require a bachelors degree or higher in a "specialized field," nor do similar firms impose such a requirement. This argument is based on two factors. First, the statutory definition of specialty occupation requires "theoretical and practical application of a body of highly specialized knowledge, ... and attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation." 8 U.S.C. § 1184(i)(1).[3] Second, under the regulatory guidelines, a position qualifies as a specialty occupation if it satisfies any of the following four factors:

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A). The INS reads the reference to a "degree" in the regulatory guidelines as encompassing the statutory requirement of a bachelor's (or higher) degree *in the specific specialty* (or

its equivalent). *See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Defs.' Mem.") at 15–17. According to the INS then, it is not enough under the guidelines that the employer require a bachelor's degree, that degree must also be in a specific specialty.

Applying this reading of the regulatory framework, the INS concluded that neither Tapis, nor similar firms in the industry, require a bachelor's degree in a specialized area. The INS focused on Tapis's assertion that it requires, as a minimum, a bachelor's degree in marketing, business administration, or a related field, as well as additional training or experience in the field of interior design. *See* Defs.' Mem. at 19. Defendants also note that evidence regarding other employers indicates that a range of baccalaureate degrees are acceptable. *See id.*

 While the INS is provided substantial deference in interpreting its regulatory guidelines, its interpretation is not controlling where " 'it is plainly erroneous or inconsistent with the regulation.' " *Shanti*, 36 F.Supp.2d at 1162 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)). Here, the INS's interpretation is suspect, not because of what it reads into the statute, but because of what it reads out. The INS was not unreasonable in interpreting the guidelines to demand that an employer require a degree in a specific field. Otherwise a position would qualify if any bachelor's degree were required. What the INS ignores is that the guidelines allow for a bachelor's degree or *its equivalent.* By ignoring this language, the INS's interpretation precludes any position from satisfying the "specialty occupation" requirements where a specific degree

Mem. at 12–13. Whatever the merits of this argument, the court need not consider it because Defendants concede that the individual Plaintiffs have standing to challenge the INS's refusal to extend their nonimmigrant status. As Defendants note, this issue turns on the success of Tapis's challenge, which is not affected by the standing argument. Any dis-

cussion of the standing issue, therefore, is academic.

3. The applicable regulations similarly require the "attainment of a bachelor's degree or higher in a specific specialty, or its equivalent." 8 C.F.R. § 214.2(h)(4)(ii).

is not available in that field. Thus, in this case, Mr. Pindwarawala's position could not qualify unless he obtained a degree in interior design showroom management.

The INS's position is contrary to the regulatory language. According to the statutory definition and INS guidelines, a position may qualify as a specialty occupation if the employer requires a bachelor's degree *or its equivalent. See* 8 U.S.C. § 1184(i)(1); 8 C.F.R. § 214.2(h)(4)(iii)(A). For the "equivalent" language to have any reasonable meaning, it must encompass not only skill, knowledge, work experience, or training, *see e.g., Augat, Inc. v. Tabor,* 719 F.Supp. 1158, 1160–61 (D.Mass.1989) (finding occupation a "profession" under prior regulatory framework where alien had no bachelor's degree), but also various combinations of academic and experience based training. It defies logic to read the bachelor's requirement of "specialty occupation" to include only those positions where a specific bachelor's degree is offered. In fields where no specifically tailored baccalaureate program exists, the only possible way to achieve something equivalent is by studying a related field (or fields) and then obtaining specialized experience. By including the "or its equivalent" language, the statute and regulations recognize that the needs of a specialty occupation can be met through education, experience, or some combination of the two.

The INS attempts to find support for its denial in a number of judicial decisions that are distinguishable from the facts in this case. In *All Aboard Worldwide Couriers, Inc. v. Attorney General,* 8 F.Supp.2d 379 (S.D.N.Y.1998), the INS relies upon the court's finding that the position of public relations consultant could not be a specialized occupation because the position did not require a bachelor's degree in any specialty. *Id.* at 381–82. Instead, the plaintiff submitted evidence that the mini-mum requirement for the position of public relations consultant was some type of bachelor's degree, in addition to experience in the field. *Id.* at 380–81. Here, Plaintiff Tapis has submitted undisputed evidence that it requires a bachelors degree from a limited number of academic fields (marketing or business) *in addition to specialized design experience. See* Administrative Record ("A.R.") at 64.[4] The INS also argues that *Shanti,* 36 F.Supp.2d 1151, supports its decision because the court there upheld the denial of an H–1B permit where the employer required a bachelor's in business administration. Unlike in *Shanti,* however, Tapis also required specialized design experience for its position of Showroom Manager. Cases such as *All Aboard* and *Shanti* stand for the proposition that a generalized bachelor's degree requirement, without more, is not enough to make the position a "specialty occupation." They do not preclude a finding of specialty occupation where, as here, the employer can show that he requires a certain type of bachelor's degree (business or marketing) *in addition to* specialized experience or training (design).

Applying the proper interpretation of INS guidelines, it is evident that Plaintiff Tapis demands, as a minimum requirement for the position of showroom manager, a bachelor's degree or higher in business administration as well as specialized training or experience in the field of design. Together, these constitute the equivalent of a specialized baccalaureate degree. In addition, the record demonstrates that Mr. Pindwarawala meets these requirements. See 8 C.F.R. § 214.2(h)(4)(iii)(C).

For the forgoing reasons, the court finds the INS's refusal to extend Mr. Pindwarawala's H–1B visa to be an abuse of its discretion.

4. The Government characterizes Tapis's argument as being that "any bachelor's degree suffices to qualify a position as a 'specialty occupation.'" Defs.' Mem. at 17. Plaintiffs nowhere advocate this unsupportable position.

B. Defendants' Failure to Explain Their Departure from Prior Precedent.

Plaintiffs also argue that it was an abuse of discretion to deny Tapis's application having previously awarded H–1B status, because the INS provided no explanation for its refusal to adhere to its precedent. *See Louisiana Philharmonic Orchestra v. INS,* 44 F.Supp.2d 800, 802 (E.D.La.1999). The AAU denial of Plaintiff's appeal makes no mention of the earlier decision to award Mr. Pindwarawala an H–1B visa. *See* A.R. at 1–5. While the case law does not specify how much explanation will suffice, the INS provided none in its AAU decision, and in its brief before this court argues only that the prior decision was in error. *See* Defs.' Mem. at 14–15. While the "INS may be able to elucidate a rational basis for [its departure from prior precedent] and establish that the earlier approval [was] a mistake, ... it must state these reasons ... before it is entitled to the deferential standard of review it normally receives." *Louisiana Philharmonic,* 44 F.Supp.2d at 804. By not addressing its prior approval of Plaintiffs H–1B visa, the INS further abused its discretion.

## III. CONCLUSION

For the reasons discussed above, this court finds that the INS committed an abuse of discretion by denying Tapis's application for an H–1B visa for Mr. Pindwarawala. As such the court ALLOWS Plaintiffs' cross motion for summary judgment and directs the INS to grant Mr. Pindwarawala's H–1B visa, effective the date his previous visa expired. The court further directs the INS to restore the immigration status of Mr. Pindwarawala and Ms. Kangroo to its position had they properly granted the H–1B renewal application.