# United States Court of Appeals
## For the First Circuit

No. 06-1947

ROYAL SIAM CORP. AND SURASAK SRISANG,

Plaintiffs, Appellants,

v.

MICHAEL CHERTOFF, SECRETARY OF THE DEPARTMENT OF
HOMELAND SECURITY,* ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Héctor M. Laffitte, Senior U.S. District Judge]

Before

Torruella, Circuit Judge,
Selya, Senior Circuit Judge,
and Lynch, Circuit Judge.

Patrick D. O'Neill, with whom O'Neill & Gilmore, P.S.C. was on brief, for appellants.
Sheldon Gisser, Office of Chief Counsel, United States Citizenship and Immigration Services, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney (Chief, Appellate Division), and Mariana E. Bauzá-Almonte, Assistant United States Attorney, were on brief, for appellees.

April 27, 2007

_____
*We have substituted Michael Chertoff as the lead defendant in place of Tom Ridge, his predecessor in office. See Fed. R. App. P. 43(c).

**SELYA**, **Senior Circuit Judge**.  After the Department of Homeland Security (DHS), through its division of Citizenship and Immigration Services (CIS), denied a petition for renewal of a nonimmigrant specialty occupation visa, the petitioner, Royal Siam Corporation (RSC), together with the affected worker, Surasak Srisang, brought a civil action in the United States District Court for the District of Puerto Rico in hopes of reversing CIS's decision.  Those hopes were never realized.  After some procedural backing and filling, the district court granted summary judgment in favor of the defendants (all government agencies or actors).  See Royal Siam Corp. v. Ridge, 424 F. Supp. 2d 338 (D.P.R. 2006).  Upon careful consideration of the plaintiffs' appeal, we affirm.

## I.  BACKGROUND

We assume the reader's familiarity with the district court's opinion and, thus, content ourselves with a sketch of the pertinent facts and travel of the case.

RSC owns and operates an upscale Thai restaurant in Carolina, Puerto Rico.  On a petition filed by RSC's predecessor in interest in 1999, Srisang — a Thai national who purportedly possessed the equivalent of a bachelor's degree in business administration — received a specialty occupation visa (colloquially known as an H-1B visa).  This nonimmigrant visa allowed him to enter the United States for a three-year period in order to work as a restaurant manager.  Srisang availed himself of the opportunity.

In 2002, with Srisang's visa due to expire, RSC sought its renewal. During the course of its review, CIS advised RSC of its doubts about the petition. On October 24, 2002, the agency issued a request for additional proof, noting that the "evidence submitted is not sufficient to establish that the job is specialty in scope." Although RSC made a supplemental submission, CIS eventually denied the petition. On administrative review, CIS's appeals office upheld the denial.[1]

RSC and Srisang thereupon commenced this action, posturing it as a request for review of a final agency decision under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. In their complaint, they sought declaratory and injunctive relief. The district court stayed removal proceedings against Srisang. In due course, the court, while retaining jurisdiction, remanded the case to CIS for a fuller explanation of its decision. The district court found the cryptic quality of the original decision especially troubling in light of the agency's 1999 approval of an H-1B visa petition for what the court deemed to be an "equivalent position."

On remand, CIS reaffirmed its previous denial of the 2002 petition. In explaining its decision, CIS observed that it now

---

[1]The authority to grant or deny petitions for specialty occupation visas, formerly exercised by the Attorney General and the Immigration and Naturalization Service, now resides with DHS. See Clark v. Martinez, 543 U.S. 371, 374 n.1 (2005); Lattab v. Ashcroft, 384 F.3d 8, 13 n.2 (1st Cir. 2004). For clarity of exposition, we refer to the appropriate bureau within DHS — CIS — regardless of when agency action occurred.

regarded its grant of the 1999 petition (which rested on similar data) as plainly erroneous because the job, as described by RSC's predecessor in interest, did not qualify as a specialty occupation. See 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1184(i); 8 C.F.R. § 214.2(h)(4)(iii)(A). A job does not qualify as a specialty occupation unless it satisfies an amalgam of criteria that relate to educational requirements, complexity of the work, the specialized nature of the duties to be performed, and the like. See 8 C.F.R. § 214.2(h)(4)(iii)(A). In this case, the agency concluded that the proof submitted did not establish that the restaurant manager position — either in 1999 or in 2002 — constituted a specialty occupation within the purview of these criteria.

CIS's explanation did not stop there. The agency noted that its approval of the earlier petition had been erroneous for another reason as well. In 1998, CIS had found Srisang's marriage to a United States citizen fraudulent, that is, entered into for the purpose of circumventing the immigration laws. Citing 8 U.S.C. § 1154(c), CIS expressed the view that because Srisang had engaged in marriage fraud, he was "statutorily ineligible" for a specialty occupation visa.

The circumstances attendant to this alternate ground of decision are not in dispute. The marriage occurred in 1995. As a result, Srisang was conditionally granted lawful permanent resident status. In 1997, Srisang sought to make that status unconditional.

-4-

Following an investigation, however, CIS found the marriage fraudulent (a finding that Srisang does not now contest). Withal, the government's left hand obviously did not appreciate what the right hand was doing. Although the marriage fraud finding was brought to CIS's attention in connection with the 1999 specialty occupation visa petition, the agency had, in an apparent oversight, approved that petition.[2]

With CIS's detailed amplification of the binary grounds for rejection of the 2002 visa petition in hand, the district court ruled that the denial was neither arbitrary nor capricious. See Royal Siam, 424 F. Supp. 2d at 343. Accordingly, the court entered summary judgment in the defendants' favor. This timely appeal ensued.

## II. DISCUSSION

On appeal, RSC and Srisang attack both of the reasons advanced by CIS in support of its decision. First, they maintain that the restaurant manager position qualifies as a specialty occupation and that CIS, in failing to reach this conclusion, acted arbitrarily. Second, they posit that the marriage fraud bar does not apply in cases involving nonimmigrant visas. As a fallback,

---

[2]This comedy of errors allowed Srisang to depart voluntarily from the United States on January 23, 2000 (thus mooting the removal proceedings that had been brought in consequence of his sham marriage) and return three weeks later (pursuant to the specialty occupation visa petition that CIS had approved in November of 1999).

they exhort us to find that the government forfeited any right to invoke either rationale by approving the 1999 visa petition notwithstanding full disclosure, at that time, of both the job description and the marriage fraud.

The government rejoins that we lack jurisdiction to entertain this appeal under the Immigration and Nationality Act (INA), as amended by the REAL ID Act of 2005, 8 U.S.C. § 1252(a)(2)(B)(ii). Its second line of defense is that both grounds of decision were well-taken; that neither was waived; and that, therefore, the district court's decision is bulletproof on the merits.

Given the sprawling nature of this asseverational array, we begin at the beginning and address the jurisdictional question. We then move to the merits.

## A.  The Jurisdictional Question.

Under 28 U.S.C. § 1291, we have jurisdiction over appeals from final decisions and orders of the district courts within this circuit. The case before us comprises an appeal from a decision of one such district court — a decision that is final inasmuch as it ends the litigation pending in that court, leaving nothing to be done but to execute the judgment. Consequently, we have jurisdiction over this appeal. See Jilin Pharm. USA, Inc. v. Chertoff, 447 F.3d 196, 199 n.4 (3d Cir. 2006); El-Khader v. Monica, 366 F.3d 562, 565-66 (7th Cir. 2004).

That is not the end of the jurisdictional issue. The real import of the government's jurisdictional exegesis relates to whether the district court had subject-matter jurisdiction. We must consider that aspect of the argument despite the government's awkward phrasing of it. After all, it normally is incumbent upon an appellate court to satisfy itself both of its own subject-matter jurisdiction and of the subject-matter jurisdiction of the trial court before proceeding further. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986); Irving v. United States, 162 F.3d 154, 160 (1st Cir. 1998) (en banc).

In this instance, there may be reason to think that the jurisdiction of the district court seems suspect. The INA, in its current iteration, is littered with jurisdiction-stripping provisions. Of particular pertinence here, the law provides (with exceptions not relevant to this case) that:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review —
>
> . . . .
>
> (ii) any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under [8 U.S.C. §§ 1151-1381] to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under [certain asylum provisions].

8 U.S.C. § 1252(a)(2)(B)(ii). The government suggests that, under this provision, no court has jurisdiction to review CIS's denial of an H-1B visa petition because such a determination is fully committed to agency discretion. See id. § 1184(a)(1) (stating that "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe").

The cogency of this argument is not self-evident. Even though the jurisdiction-stripping provisions of section 1252 apply outside the removal context, see Zhu v. Gonzales, 411 F.3d 292, 294 (D.C. Cir. 2005); El-Khader, 366 F.3d at 567; CDI Info. Servs., Inc. v. Reno, 278 F.3d 616, 620 (6th Cir. 2002); Van Dinh v. Reno, 197 F.3d 427, 432 (10th Cir. 1999), the question remains whether the statutory scheme places the authority to grant H-1B visa petitions sufficiently within CIS's discretion as to engage the gears of the jurisdictional bar.

The answer to this question is freighted with uncertainty, in part because the courts of appeals have disagreed about how to approach the matter of when a statute can be said to "specify" discretionary authority. See, e.g., Zhu, 411 F.3d at 295 (describing various approaches). To illustrate, the Sixth Circuit determined that it lacked jurisdiction to review the denial of an H-1B visa because the regulations, rather than the pertinent statute itself, commit the matter to agency discretion. See CDI

-8-

Info. Servs., 278 F.3d at 619. But other circuits have rejected that interpretive model. See, e.g., Zafar v. U.S. Atty. Gen., 461 F.3d 1357, 1361 (11th Cir. 2006); Zhao v. Gonzales, 404 F.3d 295, 303 & n.6 (5th Cir. 2005). We, too, recently have rejected it, insisting that the relevant commitment to agency discretion must be found in the statute itself. See Alsamhouri v. Gonzales, ___ F.3d ___, ___ (1st Cir. 2007) [No. 05-2800, slip op. at 9-10]. There is, moreover, a further problem. The text of the statute upon which the government relies here, 8 U.S.C. § 1184(a)(1), is considerably less definitive in its commitment of authority to agency discretion than other statutes that have been found to animate the jurisdictional bar.

In the face of these concerns, we believe that this is a case in which we may — and should — bypass the jurisdictional question. We recognize, of course, that federal courts cannot ordinarily exercise hypothetical jurisdiction; that is, a federal court ordinarily may not assume the existence of jurisdiction in order to decide the merits of a case or controversy. Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 127 S. Ct. 1184, 1191 (2007); Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 94 (1998). But that principle admits of an area of elasticity.

In mapping the contours of this narrow crevice, we have distinguished between Article III jurisdiction (which may never be bypassed) and statutory jurisdiction (which may occasionally be

bypassed).  See, e.g., Universal Communic'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 426 & n.11 (1st Cir. 2007); Nisselson v. Lernout, 469 F.3d 143, 150-51 (1st Cir. 2006); Parella v. Ret. Bd. of R.I. Employees' Ret. Sys., 173 F.3d 46, 54 (1st Cir. 1999); see also McBee v. Delica Co., 417 F.3d 107, 127 (1st Cir. 2005) ("[W]e have consistently interpreted the rule [against hypothetical jurisdiction] as applying in its strict form only to issues going to Article III's requirements.").  In the immigration context, we have bypassed enigmatic jurisdictional questions in circumstances in which precedent clearly adumbrates the result on the merits. See, e.g., Rivera-Martinez v. Ashcroft, 389 F.3d 207, 209 n.7 (1st Cir. 2004); Seale v. INS, 323 F.3d 150, 152, 157 (1st Cir. 2003).[3]

This case fits within that crevice.  On the one hand, the jurisdictional question is not only thorny but also a matter of statutory, not constitutional, dimension; and its proper resolution is uncertain.  On the other hand, the outcome on the merits is foreordained.  Consequently, we bypass the jurisdictional question and proceed directly to the heartland of the plaintiffs' appeal.

---

[3]The language that we have used in immigration cases is not identical to the language that we have used in non-immigration matters.  See Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 59-60 (1st Cir. 2003) (describing the different formulations).  At bottom, however, the approaches are entirely consistent with one another.  See id. at 60.

-10-

## B.   **The Merits**.

We are bound by the same ground rules as the district court in assessing agency decisions.  S. Shore Hosp., Inc. v. Thompson, 308 F.3d 91, 97 (1st Cir. 2002).  Thus, the district court's decision in this case engenders de novo review.  See id.

Seeking a foothold, RSC and Srisang start by pointing out that an agency's unexplained departure from a prior course of action may raise arbitrariness concerns.  See, e.g., Saint Fort v. Ashcroft, 329 F.3d 191, 203-04 (1st Cir. 2003); Davila-Bardales v. INS, 27 F.3d 1, 5 (1st Cir. 1994).  That doctrine, however, does not shed any light here.  At this stage of the litigation, we are not dealing with an unexplained departure: on remand from the district court, the agency carefully laid out the reasoning that underpinned its repudiation of the 1999 specialty occupation visa under which Srisang had been allowed to enter the country.  CIS said that the earlier petition had been approved in error — and accordingly, the 2002 petition should be denied — because (i) the restaurant manager position failed to qualify as a specialty occupation and (ii) Srisang's marriage fraud rendered him statutorily ineligible for the requested largesse.  Each of these grounds floats on its own bottom; if either passes muster, the district court's grant of summary judgment must be upheld.

Rising to this challenge, RSC and Srisang contest both grounds.  They argue that CIS misconstrued the administrative

record, misapplied the regulations pertaining to specialty occupations, and incorrectly invoked the marriage fraud bar. In our view, CIS's determination that RSC's restaurant manager position was not a specialty occupation is dispositive here.

We do not write on a pristine page. Congress has laid out eligibility standards for the granting of H-1B specialty occupation visas. See 8 U.S.C. § 1101(a)(15)(H)(i)(b). Under these standards, a specialty occupation requires: "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." Id. § 1184(i)(1). The statute also sets forth requirements pertaining to licensure (not applicable here) and providing for due recognition of experience and expertise. See id. § 1184(i)(2). Agency regulations flesh out these requirements. See 8 C.F.R. § 214.2(h). The regulations define a specialty occupation as:

> an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

-12-

Id. § 214.2(h)(4)(ii). To satisfy this definition, a position must touch at least one of four overlapping bases. See id. § 214.2(h)(4)(iii)(A). These bases are set out in the margin.[4] The burden of proving that a particular position comes within this taxonomy (and, thus, qualifies as a specialty occupation) is on the applicant. See 8 U.S.C. § 1361.

Against this backdrop, we examine what transpired here. CIS, relying in part on the United States Department of Labor's occupational outlook handbook (the Handbook), determined that the plaintiffs failed to show that the restaurant manager position touched any of the four specified bases. In that regard, the agency found that the duties of the position were not more complex

---

[4]The bases are:
(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A).

than those associated with similar (non-specialty) positions in the general economy.

The plaintiffs attack CIS's analysis on several fronts. First, they take aim at the agency's use of the Handbook, which recounts the particulars of numerous occupations. This array includes "food service managers," and CIS placed RSC's restaurant manager position within that niche. Doing so was an error, the plaintiffs claim, because that placement lumped RSC's establishment with less toney establishments (such as fast-food and chain restaurants). Relatedly, the plaintiffs argue that slavish devotion to the Handbook led CIS to ignore evidence demonstrating RSC's uniquely complex and specialized needs. We address these arguments in the ensemble.

When Congress has entrusted an agency with rulemaking and administrative authority, courts ordinarily afford considerable deference to the agency's interpretation of the regulations that it has promulgated under that authority. See Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945); S. Shore Hosp., 308 F.3d at 97. Courts should withhold this deference only if the agency's interpretation is "plainly erroneous or inconsistent with the regulation." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (quoting Seminole Rock, 325 U.S. at 414). We find no indication that CIS forfeited its entitlement to deference here.

-14-

In its review of petitions for nonimmigrant work visas, CIS frequently — and sensibly — consults the occupational descriptions collected in the Handbook. Subject only to caveats at the outer fringes, the choice of what reference materials to consult is quintessentially within an agency's discretion — and, thus, courts routinely have approved CIS's practice of consulting the Handbook. See, e.g., Blacher v. Ridge, 436 F. Supp. 2d 602, 609 (S.D.N.Y. 2006); Shanti, Inc. v. Reno, 36 F. Supp. 2d 1151, 1165 (D. Minn. 1999); Hird/Blaker Corp. v. Sava, 712 F. Supp. 1095, 1101 n.2 (S.D.N.Y. 1989); cf. Defensor v. Meissner, 201 F.3d 384, 387 n.2 (5th Cir. 2000) (consulting the Handbook for a similar purpose).

Here, moreover, CIS's characterization of the restaurant manager position as a species of the generic food service manager position appears entirely reasonable. Based on the evidence before it, the agency fairly summarized the duties of RSC's restaurant manager position as follows:

> [The restaurant manager] would be in charge of all operations, and he will perform duties that entail, in part: hiring, firing, and supervising employees; contacting suppliers and ordering supplies; promoting the restaurant; designing the layout of the restaurant and its equipment; estimating food and beverage costs and requisitions; conferring with food preparation and other personnel to plan menus and related activities; investigating and resolving food quality and service complaints; and handling all financial matters.

-15-

These tasks appear a good match for the duties of a food service manager, which the 2004-05 Handbook describes, in pertinent part, as follows:

> Food service managers are responsible for the daily operations of restaurants and other establishments that prepare and serve meals and beverages to customers. Besides coordinating activities among various departments, such as kitchen, dining room, and banquet operations, food service managers ensure that customers are satisfied with their dining experience. In addition, they oversee the inventory and ordering of food, equipment, and supplies and arrange for the routine maintenance and upkeep of the restaurant, its equipment, and facilities. Managers generally are responsible for all of the administrative and human-resource functions of running the business, including recruiting new employees and monitoring employee performance and training.

The positions coincide in two other salient respects as well. First, RSC has singled out fluency in English and Thai as an important asset for its position. Correspondingly, the Handbook notes that food service managers "need to speak well, often in several languages, with a diverse clientele and staff." Second, RSC projected an annual salary of $40,000 for the restaurant manager position. This is roughly comparable to the median annual earnings of a food service manager for a full-service restaurant in 2002 as per the Handbook ($37,280).

The plaintiffs' attempt to pass off the Handbook classification as suitable only for fast-food and chain restaurants is unavailing. A fair reading makes clear that the Handbook

contemplates that the food service manager heading is to cover both full-service restaurants and less upscale operations. To cinch matters, the plaintiffs identify no other Handbook classification that is more apropos. We conclude, therefore, that it was well within the realm of the agency's discretion to seek guidance from the Handbook and, having done so, to refer to the food service manager heading.

We also uphold the agency's determination that the restaurant manager position is not one that by its nature demands a bachelor's degree or its equivalent in a specific specialty. The Handbook makes pellucid that, in hiring restaurant managers, employers seek candidates with a wide variety of backgrounds and credentials, including graduates of hospitality management programs (some of which confer bachelor's degrees and some of which do not), persons trained in-house, and those with hands-on experience gained elsewhere. There is nothing in the record that compels, or even strongly supports, a conclusion that a bachelor's degree or its equivalent is a necessary credential for a restaurant manager.

In urging a contrary finding, the plaintiffs argue that there is evidence in the record to the effect that a bachelor's degree is the industry standard. That argument is disingenuous. The only "evidence" to which the plaintiffs point comprises, in its entirety, a one-paragraph statement furnished by a single restauranteur at RSC's request. The statement asserts that every

-17-

applicant for a managerial position at that particular eatery is expected to have a degree in business administration. As CIS reasonably concluded, however, a bald assertion about the practices of a lone competitor, by itself, does not suffice to prove an industry-wide standard.

The plaintiffs have another shot in their sling. They contend that, even if a bachelor's degree is not generally required for restaurant managers, RSC is in need of a restaurant manager with a degree in business administration and related work experience. That argument does not withstand scrutiny.

The courts and the agency consistently have stated that, although a general-purpose bachelor's degree, such as a business administration degree, may be a legitimate prerequisite for a particular position, requiring such a degree, without more, will not justify the granting of a petition for an H-1B specialty occupation visa. See, e.g., Tapis Int'l v. INS, 94 F. Supp. 2d 172, 175-76 (D. Mass. 2000); Shanti, 36 F. Supp. 2d at 1164-66; cf. Matter of Michael Hertz Assocs., 19 I&N Dec. 558, 560 (BIA 1988) (providing frequently cited analysis in connection with a conceptually similar provision). This is as it should be: elsewise, an employer could ensure the granting of a specialty occupation visa petition by the simple expedient of creating a generic (and essentially artificial) degree requirement.

We hasten to emphasize that a degree requirement in a specific specialty — one that relates directly to the duties and responsibilities of a particular position — is given more weight by the agency than a requirement for a generic degree. See 8 C.F.R. § 214.2(h)(4)(ii). This gloss is mandated by the language of the statute itself. See 8 U.S.C. § 1184(i)(1). Given this distinction, we cannot fault CIS's determination that RSC's requirement for a free-floating degree in business administration was insufficient, without some compelling connection to the responsibilities of the restaurant manager position, to require a finding of a specialty occupation here.[5]

The rejection of these legal arguments brings us to the question of whether the agency, on the record as a whole, made a reasonable decision. The record reveals that CIS considered all the relevant facts and produced a closely reasoned judgment as to the nature of the work involved in the restaurant manager position. In the absence of an error of law — and we see none here — this case comes down to straight abuse-of-discretion review. Under that standard, the outcome is foreordained. While the APA authorizes a reviewing court to set aside an agency's "action, findings, [or]

---

[5]The plaintiffs make a veiled suggestion that the combined requirements of a bachelor's degree in business administration plus work experience transform its degree requirement into the "equivalent" of a specialized degree. Assuming, for argument's sake, that this suggestion has been sufficiently developed, we think that the facts here afforded CIS ample discretion to reject it.

-19-

conclusions" if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), an agency's decision does not trigger that provision as long as it correctly explicates the governing law and turns on a plausible rendition of the facts in the record.[6] See Granite State Concrete Co. v. Surface Transp. Bd., 417 F.3d 85, 92 (1st Cir. 2005). In determining that the position in question did not warrant the granting of a petition for a specialty occupation visa, CIS has not operated outside the wide margins of this discretion.

Of course, the plaintiffs also ask us to factor into the mix CIS's earlier granting of the 1999 specialty occupation visa petition. We have taken that circumstance into account and conclude that it does not compel a reversal here.

The mere fact that the agency, by mistake or oversight, approved a specialty occupation visa petition on one occasion does not create an automatic entitlement to the approval of a subsequent petition for renewal of that visa. See, e.g., Savoury v. U.S. Atty. Gen., 449 F.3d 1307, 1317-18 (11th Cir. 2006); Sussex Eng'g, Ltd. v. Montgomery, 825 F.2d 1084, 1090 (6th Cir. 1987); see also 8 C.F.R. § 214.1(a)(3)(i) (requiring nonimmigrant aliens applying

---

[6]This is a highly deferential standard of review — and where, as here, an agency is called upon both to interpret regulations that it has promulgated and to find the facts, deference is doubly desirable.

-20-

for extensions of stay to establish either that they are admissible or that inadmissibility has been waived).

Along the same lines, this prior history does not justify the plaintiffs' claim of estoppel. We have reiterated, with a regularity bordering on the echolalic, that estoppel rarely will be invoked against the federal government. See, e.g., Frillz, Inc. v. Lader, 104 F.3d 515, 518 (1st Cir. 1997); United States v. Ven-Fuel, Inc., 758 F.2d 741, 761 (1st Cir. 1985). That principle holds fast in immigration cases. See, e.g., Costa v. INS, 233 F.3d 31, 38 (1st Cir. 2000) (requiring, among other things, a showing of "affirmative government misconduct"); see also Andrade v. Gonzales, 459 F.3d 538, 545 n.2 (5th Cir. 2006); Savoury, 449 F.3d at 1318-19. In the absence of affirmative government misconduct — and we descry none here — there is no room for invocation of the estoppel doctrine.

## III. CONCLUSION

We end with a succinct summary. For the reasons elucidated above, we bypass the jurisdictional question. On the merits, the ultimate decision about whether to grant a petition for a specialty occupation visa lies within the discretion of the agency. See 8 U.S.C. § 1184(a)(1). Because CIS's exercise of discretion here is untainted by either legal or factual error, we discern no basis for disturbing its denial of RSC's petition.

-21-

Finally, we reject out of hand the plaintiffs' entreaty that estoppel should carry the day.

We need go no further.[7]  We hold, without serious question, that the district court did not err in granting summary judgment for the defendants.

**Affirmed**.

---

[7]The conclusions we have reached render it unnecessary for us to consider whether the agency, in arriving at its decision, correctly applied the marriage fraud bar contained in 8 U.S.C. § 1154(c) to this petition for a nonimmigrant work visa.  By like token, we have no need to address either the soundness or the applicability of the government's suggestion that the APA itself (specifically, 5 U.S.C. § 701(a)(2)) may foreclose judicial review of a nonimmigrant visitor's request for an extension of stay.