# United States Court of Appeals
## For the First Circuit

No. 15-1165

MARSHALL T. MORIARTY, ESQ., individually
and on behalf of all others similarly situated,

Plaintiff, Appellant,

v.

CAROLYN W. COLVIN,

Acting Commissioner, Social Security Administration,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Kenneth P. Neiman, Magistrate Judge]

Before

Howard, Chief Judge,
Lynch and Lipez, Circuit Judges.

Richard I. Greenberg for appellant.
Karen L. Goodwin, Assistant United States Attorney, with whom
Carmen M. Ortiz, United States Attorney, and Hugh Dun Rappaport,
Assistant Regional Counsel, Social Security Administration, were
on brief, for appellee.

November 20, 2015

**LYNCH**, **Circuit Judge**.  As an incentive to attorneys to bring Supplemental Security Income (SSI) claims, the Commissioner of the Social Security Administration (SSA), for more than a decade, has paid directly to qualified attorneys a fee of no more than twenty-five percent of the successful recovery of past-due benefits to clients.  See 42 U.S.C. § 1383(d)(2)(B).  When the federal government administers state supplementary payments for the state, that amount of state payments is included in "past-due benefits."  See 20 C.F.R. § 416.1503.  But when the state chooses to administer its own payments, the state amounts are not included as "past-due benefits" for the purpose of attorney compensation.  See id.

So when Massachusetts chose in 2012 to administer its own benefits, rather than rely on federal administration of its supplementary payments as it had done in the past, that had the effect of reducing the fees paid to attorneys representing Massachusetts SSI claimants.  The attorney here argues that the Commissioner cannot exclude state-administered state supplementary payments from the amount included in "past-due benefits."  Giving deference to the agency, as we must, we conclude the Commissioner can do so.

We may and do make the assumption that we have federal appellate jurisdiction.  We affirm the district court's order granting summary judgment to the Commissioner.

I.

Attorney Marshall Moriarty represented a client in a claim for SSI benefits before the SSA in 2012. Moriarty and his client had entered into an agreement in June 2012, providing that, subject to the SSA's approval, "if SSA favorably decides the claim(s)," Moriarty would receive "a fee equal to the lesser of 25% or the maximum allowable fee that, as of the date of this agreement, is $6000.00."

In 2013, Moriarty's client received a partially favorable decision, in which the SSA granted him $16,699.02 in federal and federally-administered state back payments. This amount included federal SSI payments the client was owed from November 2010 through April 2013 as well as Massachusetts state supplementary payments from November 2010 through March 2012 -- the time period during which Massachusetts's state supplementary payments[1] were federally administered. However, in April 2012, Massachusetts changed its practice and began administering its own program of supplementary payments. At that point, such payments were no longer included in the SSA's calculation of back payments for purposes of payments to attorneys.

---

[1] We refer to the state program of supplementary payments as "supplementary payments" to align with the language in 42 U.S.C. § 1382e.

Upon learning that the SSA attorney's fee award did not include twenty-five percent of the Massachusetts state-administered state supplementary payments, Moriarty wrote a letter to the SSA seeking $324.85 in additional fees. The SSA Office of the Regional Counsel e-mailed Moriarty informing him that "past-due benefits are calculated only [on] the basis of federally administered benefits and do not include state supplementation unless federally administered."

The Commissioner's position is that Moriarty's attorney's fee award can be based only on the $16,699.02 granted by the SSA, and so it cannot include a percentage of the Massachusetts state-administered state supplementary payments from April 2012 through April 2013. If Massachusetts had continued its prior practice of having the federal government administer the program, then Moriarty would have gotten twenty-five percent of the total state and federal payments. Because Massachusetts changed its practice, the Commissioner says that not only will Moriarty not receive the same amount of attorney's fees but he is also forbidden to seek the shortfall.

In August 2013, Moriarty filed a Complaint for Declaratory Relief and Petition for Writ of Mandamus in the federal district court. The parties cross-moved for summary judgment. On December 31, 2014, the district court entered judgment in favor of

the Commissioner.  Moriarty v. Colvin, 76 F. Supp. 3d 261, 268 (D. Mass. 2014).  This appeal followed.

II.

Under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f, the SSA administers SSI to eligible "individuals who have attained age 65 or are blind or disabled."  Id. §§ 1381, 1381a.  States may choose to supplement federal SSI benefits with optional state supplementary payments.  See Bouchard v. Sec'y of Health & Human Servs., 583 F. Supp. 944, 947 (D. Mass. 1984) (citing 42 U.S.C. § 1382e); 20 C.F.R. § 416.2001.  Massachusetts has chosen to do so.  States providing these supplementary payments can administer the payments on their own or enter into an agreement with the Commissioner under which the Commissioner makes supplementary payments on the state's behalf.  See 42 U.S.C. § 1382e(a)–(b).  States that administer their own supplementary payments "may establish [their] own criteria for determining eligibility requirements as well as the amounts."  20 C.F.R. § 416.2005(c).

When states choose to have the federal government administer the state supplementary payments, the federal government "assume[s] complete control" over the administration of the payments.  Bouchard, 583 F. Supp. at 947.  These states then reimburse the federal government for the state portion of the payments disbursed and pay an administrative fee.  See 42 U.S.C.

§ 1382e(d)(1). To be clear, the states do not hold separate hearings whether or not they use the federal government to administer their supplementary payments. See 106 Mass. Code Regs. § 327.120. The Commissioner's determination of eligibility for SSI benefits automatically qualifies the claimant for the state supplement. See id. The majority of states administer their own supplementary payments.[2] Some states do not provide supplementary payments at all.

As originally enacted, the SSI program did not authorize the withholding of SSI benefits from the claimant's award to pay the claimant's attorney his or her fees in successful adjudications. See Bowen v. Galbreath, 485 U.S. 74, 79 (1988). However, in 2004, the Social Security Protection Act added a subparagraph to 42 U.S.C. § 1383(d)(2), providing that when a claimant is awarded past-due benefits, "the Commissioner of Social Security shall pay out of such past-due benefits to such attorney" the attorney's fees, subject to certain limitations. Pub. L. No. 108-203, § 302(a)(4), 118 Stat. 493, 520 (2004); see 42 U.S.C. §§ 406(a)(2), 1383(d)(2)(B). Since 2007, the Commissioner has

---

[2] There are reasons a state may choose to administer its own supplementary payments. For example, those states that enter into agreements with the SSA must pay a fee of more than $10 to the SSA for each payment the SSA administers. See Social Security Handbook § 2106.2 (2011). In addition, states with federally-administered payments "los[e] all administrative control over the operation of those benefits." H.R. Rep. No. 92-231, at 5186 (1971); see also 42 U.S.C. § 1382e(b)(2).

interpreted "past-due benefits" under the SSI program as "including any Federally administered State payments," but not including supplementary payments administered by the state. Temporary Extension of Attorney Fee Payment System to Title XVI, 72 Fed. Reg. 16,720, 16,725 (Apr. 5, 2007) (codified at 20 C.F.R. § 416.1503); see also SSA Program Operations Manual System GN 03920.031(B)(1) (2012) ("In a title XVI only claim, 'past-due benefits' are the total amount of Federal and Federally administered State payments accumulated to the claimant and his or her spouse . . . because of a decision favorable to the claimant . . . ."). Accordingly, a percentage of state supplementary payments is not included as part of the attorney's fees the SSA awards in states that administer their own supplementary payments. It is this percentage of the Massachusetts state-administered state supplementary payments that Moriarty seeks.

## III.

We address the Commissioner's argument that we lack subject matter jurisdiction to decide this case.[3] Under 28 U.S.C.

_____

[3] "Under 28 U.S.C. § 1291, we have jurisdiction over appeals from final decisions and orders of the district courts within this circuit." Royal Siam Corp. v. Chertoff, 484 F.3d 139, 142 (1st Cir. 2007). Because the case before us appeals a final decision of the district court, we have jurisdiction over the appeal. Id. However, "[t]hat is not the end of the jurisdictional issue." Id. "[I]t normally is incumbent upon an appellate court to satisfy itself both of its own subject-matter jurisdiction and

§ 1331, federal courts have jurisdiction to review agency action. See Califano v. Sanders, 430 U.S. 99, 105 (1977). However, two statutes may potentially withdraw jurisdiction: (1) 42 U.S.C. § 405(h), which provides: "No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter."; and (2) 42 U.S.C. § 406(a)(3)(C), which provides: "The decision of the administrative law judge or other person conducting the review [of the amount which would otherwise be the maximum attorney's fee] shall not be subject to further review."

The answer to the jurisdictional question is not clear. However, resolving this case on the merits by affirming the grant of summary judgment has the same consequences as concluding that we do not have jurisdiction. Because the jurisdictional question is a question of statutory jurisdiction, not Article III jurisdiction, see Parella v. Ret. Bd. of R.I. Emps.' Ret. Sys., 173 F.3d 46, 54 (1st Cir. 1999), "we believe that this is a case in which we may -- and should -- bypass the jurisdictional question." Royal Siam Corp. v. Chertoff, 484 F.3d 139, 143 (1st Cir. 2007); see also Global NAPs, Inc. v. Verizon New England,

_____

of the subject-matter jurisdiction of the trial court before proceeding further." Id. The Commissioner filed a motion to dismiss below based on lack of subject matter jurisdiction, which the district court denied.

Inc., 706 F.3d 8, 12-13 (1st Cir. 2013) (explaining that "[w]hen confronted with non-constitutional challenges to jurisdiction," id. at 12-13, and the "case readily can be resolved in favor of [the party challenging jurisdiction,] . . . we may 'decline to decide the jurisdictional issues . . . ,'" id. at 13 (quoting Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 59 (1st Cir. 2003))). The Commissioner agrees we have the authority to do so.

                              IV.

"We review an appeal from a grant of summary judgment de novo." FDIC v. Estrada-Rivera, 722 F.3d 50, 52 (1st Cir. 2013).

Because we are reviewing an agency's interpretation of its governing statute, we apply the principles of Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Under Chevron, we first ask "whether Congress has directly spoken to the precise question at issue." Id. at 842. If we determine that "Congress has not directly addressed the precise question at issue," we then ask whether the agency's interpretation is a "reasonable" one. Id. at 843-44.[4]

---

[4] To the extent Moriarty suggests we should not apply the Chevron framework, he is wrong. See Splude v. Apfel, 165 F.3d 85, 90 (1st Cir. 1999) ("[T]he Social Security Administration is normally accorded the deference due to an agency plausibly interpreting its own governing statutes."); see also Barnhart v. Thomas, 540 U.S. 20, 26-30 (2003); Barnhart v. Walton, 535 U.S. 212, 217-22 (2002).

Congress has not "directly spoken to the precise question at issue." Id. at 842. Under 42 U.S.C. § 1383(d)(2)(B), "if the claimant is determined to be entitled to past-due benefits under this subchapter and the person representing the claimant is an attorney, the Commissioner of Social Security shall pay out of such past-due benefits" the lesser of "the maximum fee as does not exceed 25 percent of such past-due benefits" or "the amount of past-due benefits available after any applicable reductions." 42 U.S.C. § 1383(d)(2)(B).[5]

Whether "past-due benefits under this subchapter" includes state-administered state supplementary payments is not self-evident. Section 1382e discusses state supplementary payments and provides that "[a]ny cash payments which are made by a State . . . on a regular basis to individuals who are receiving benefits under this subchapter . . . shall be excluded under section 1382a(b)(6) of this title in determining the income of such individuals for purposes of this subchapter." Id. § 1382e(a). It then explains that "the Commissioner of Social Security and such State may enter into an agreement which satisfies subsection

_____

[5]    The term "past-due benefits" appears more than ten times throughout § 1383 and almost twenty times throughout 42 U.S.C. § 406, which has largely been incorporated into Title XVI of the Social Security Act. See 42 U.S.C. § 1383(d)(2)(A). In his brief, Moriarty also discusses § 406(a), which provides that "[i]n the case of a claim of entitlement to past-due benefits under this subchapter," the Commissioner shall approve fee agreements subject to certain conditions. See id. § 406(a)(2)(A).

- 10 -

(b) of this section under which the Commissioner of Social Security will, on behalf of such State . . . make such supplementary payments to all such individuals." Id.[6] Thus, while the subchapter unambiguously discusses state supplementary payments, it is unclear whether this subsection presupposes the existence of state supplementary payments or whether state supplementary payments should be considered as "past-due benefits under this subchapter."

The legislative history is of little assistance in resolving this question. Originally, Congress did not provide for the withholding of past-due benefits for attorney's fees in SSI cases. See Bowen, 485 U.S. at 77 (concluding that this omission was "intentional" and that "it is fair to assume that this omission

---

[6]     The sub-section in full states:

> Any cash payments which are made by a State (or political subdivision thereof) on a regular basis to individuals who are receiving benefits under this subchapter or who would but for their income be eligible to receive benefits under this subchapter, as assistance based on need in supplementation of such benefits (as determined by the Commissioner of Social Security), shall be excluded under section 1382a(b)(6) of this title in determining the income of such individuals for purposes of this subchapter and the Commissioner of Social Security and such State may enter into an agreement which satisfies subsection (b) of this section under which the Commissioner of Social Security will, on behalf of such State (or subdivision) make such supplementary payments to all such individuals.

42 U.S.C. § 1382e(a).

also reflected Congress' view that withholding past-due SSI benefits would be inconsistent with the purpose of the program . . . [g]iven the extreme financial need of SSI beneficiaries"). When Congress did authorize the withholding of past-due benefits in 2004, it did so with the purpose of "improv[ing] SSI applicants' access to representation, as more attorneys would be willing to represent claimants if they are guaranteed payment." H.R. Rep. No. 108-46, at 43 (2003). The report does not discuss whether state supplementary payments would be included in "past-due benefits." Id.[7] Given the ambiguity of the language and the inconclusive legislative history, we move to the second step of the Chevron inquiry and ask whether the Commissioner's interpretation "is based on a permissible construction of the statute." Chevron, 467 U.S. at 843.

We conclude that the Commissioner's interpretation is reasonable. The statute provides that the Commissioner "shall pay" attorney's fees "out of such past-due benefits," 42 U.S.C. § 1383(d)(2)(B), and the Commissioner explains in her brief that

_____

[7] With regard to the states' involvement with the administration of attorney's fees, the report explains only that "in cases where the States would be reimbursed for interim assistance they had provided to a beneficiary awaiting a decision on a claim for SSI benefits, the State would be paid first, and the attorney would be paid second out of the past-due benefit amount" so that "States providing interim assistance to individuals would not receive less reimbursement." H.R. Rep. No. 108-46, at 43.

- 12 -

she can make payments only out of funds over which the SSA has control -- "the federal SSI payments and the funds provided by states for federally administered state payments." As the district court found, the SSA "would have no power to withhold 25% of the total retroactive amount payable to the claimant." Moriarty, 76 F. Supp. 3d at 266. Moreover, unlike with federally-administered state payments, there is no mechanism for reimbursement when states administer their own supplementary payments. See 42 U.S.C. § 1382e(d)(1). "At the least, the [Commissioner]'s interpretation has administrative simplicity to recommend it." Scialabba v. Cuellar de Osorio, 134 S. Ct. 2191, 2212 (2014).[8]

We recognize that the Commissioner's interpretation leads to a situation where an attorney cannot collect twenty-five percent of state-administered state supplementary benefits as fees. The Commissioner acknowledges that because under her regulations, "past-due benefits do not include state-administered

---

[8] The Commissioner also represents that when states administer their own payments, "the Commissioner often does not know the precise amount of the payments to an individual SSI recipient," and the SSA is therefore "not in a position to calculate a fee based on a percentage of such payments." Moriarty contests this representation and argues that the Commissioner can access information regarding state-administered state supplementary payments. We need not wade into this factual dispute. Whether or not the Commissioner can ultimately determine the amount of state-administered supplementary payments through publicly available information, as the district court explained, she does not have control over the administration of these payments. Moriarty, 76 F. Supp. 3d at 266.

- 13 -

supplements . . . [she] cannot approve a fee that includes a percentage of the state-administered supplement." And if Moriarty charges or attempts to collect a fee above that which has been set by the Commissioner, he would violate the Social Security Act and "shall be deemed guilty of a misdemeanor," 42 U.S.C. § 406(a)(5).

Yet we cannot conclude that this outcome renders the Commissioner's interpretation unreasonable. Whether or not the attorney receives a portion of the state-administered state supplementary payments, by receiving a percentage of the federal payments, the attorney still has received an incentive to represent claimants. Cf. Detson v. Schweiker, 788 F.2d 372, 376 (6th Cir. 1986) ("[T]he primary financial incentive provided by § 406 is not the amount of attorney's fees but is the direct payment of fees. . . . [T]his financial incentive is unaffected by the Secretary's method of calculating the withholding amount." (citing Burnett v. Heckler, 756 F.2d 621, 626 (8th Cir. 1985))). There are competing concerns when determining attorney's fees: "There is a danger that too much of the benefits go to the lawyers rather than the claimants. There is also the danger that if the lawyers have no assured compensation the claimants will not be represented. . . . Congress has dealt with [this problem] and delegated to the [Commissioner] the authority to spell out what

Congress has intended."  Rodriguez v. Sec'y of Health & Human Servs., 856 F.2d 338, 340 (1st Cir. 1988).[9]

V.

For the reasons stated above, the district court's order is affirmed.

---

[9]    In determining that the Commissioner's interpretation is reasonable, "we are not unmindful that the fees of attorneys representing [clients in states without federally-administered supplementary payments] will be reduced."  Detson, 788 F.2d at 376.  "However, dissatisfaction with this result" is for Congress and the Commissioner -- not this court -- to address.  Id. at 376-77.