# United States Court of Appeals
## For the First Circuit

No. 11-1805

JEFFREY H. REDFERN; ANANT N. PRADHAN,

Plaintiffs, Appellants,

v.

JANET NAPOLITANO, in her official capacity as Secretary of
Homeland Security; JOHN S. PISTOLE, in his official capacity as
Administrator of the Transportation Security Administration,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before
Torruella, Lipez and Howard,
Circuit Judges.

Jeffrey H. Redfern, pro se, with whom Anant N. Pradhan, pro se, was on brief for appellants.
Mahesha P. Subbaraman, with whom Robins, Kaplan, Miller & Ciresi, LLP, was on brief for Freedom to Travel USA, Amicus Curiae.
Sharon Swingle, Attorney, Appellate Staff, Civil Division, U.S. Department of Justice, with whom Mark B. Stern, Sydney Foster, Douglas N. Letter, Attorneys, Appellate Staff, Tony West, Assistant Attorney General, Stuart F. Delery, Principal Deputy Assistant Attorney General, and Carmen M. Ortiz, United States Attorney, were on brief for appellees.

July 11, 2013

**TORRUELLA, Circuit Judge.** Pro se plaintiff-appellants Jeffrey H. Redfern and Anant N. Pradhan filed an action in the district court challenging the constitutionality of the Transportation Security Administration's (TSA) use of Advanced Imaging Technology (AIT) body scanners and enhanced pat-downs as primary methods of passenger screening at U.S. airports. The district court dismissed appellants' claims for declaratory and injunctive relief on the ground that it was without jurisdiction to entertain them, because the case should have been filed directly with this court in accordance with 49 U.S.C. § 46110. Appellants appealed and we ordered the parties to conduct extensive briefing, both on the jurisdictional issue and on the merits of appellants' constitutional claims.

The government, however, has informed us that, as of May 16, 2013, the AIT scanners currently deployed at passenger screening checkpoints are no longer generating the revealing images of passengers' bodies that spawned this lawsuit; instead, they are displaying a generic outline of a person for all passengers. Given the potential impact of this new development on the justiciability of the case, we ordered the parties to conduct additional briefing addressing the question of whether appellants' claims have now become moot. Having reviewed the pertinent submissions, we conclude that the claims have indeed become moot, and we therefore

vacate the judgment below and remand the case with instructions to dismiss based on mootness.

## I. Background

Congress created the TSA in response to the September 11, 2001, terrorist attacks and charged it with ensuring civil aviation security, including the screening of all passengers and property that move through U.S. airports. See 49 U.S.C. § 114(d). The agency complies with this mandate in part by issuing Standard Operating Procedures (SOPs), which are approved by the TSA Administrator and set forth the uniform practices to be followed by TSA personnel. One such SOP, called the Screening Checkpoint SOP, specifies the procedures that govern the screening of passengers and property at all passenger screening checkpoints.

On September 17, 2010, the TSA issued a revised Screening Checkpoint SOP, which was to be implemented on October 29, 2010 (the "2010 SOP"). The government notes that this directive contains "updated procedures for detecting nonmetallic explosive devices and weapons," including the use of AIT scanners and enhanced pat-downs. The 2010 SOP authorizes the use of two types of AIT scanners (1) backscatter x-ray scanners (which use small amounts of x-rays) and (2) millimeter-wave scanners (which use radio waves). The TSA began using AIT scanners in 2007 to provide secondary screening for selected passengers, but the 2010 SOP for the first time authorizes their use as primary screening tools.

-3-

The 2010 SOP also provides that persons who prefer not to undergo an AIT scan may instead opt for an enhanced pat-down. According to appellants, this procedure is highly intrusive, involving "the touching of the genitals, buttocks, and . . . breasts of the individual being screened." In their view, this procedure, "if done non-consensually, would amount to a sexual assault in most jurisdictions." A traveler is not permitted to opt out of the enhanced pat-down and receive a standard pat-down or metal-detection inspection. Furthermore, a traveler who refuses to undergo one or the other of these new procedures will not be permitted to fly. 49 U.S.C. § 44902(a)(1).

Appellants commenced this action in federal district court in Massachusetts against Janet Napolitano, in her official capacity as Secretary of Homeland Security, and John Pistole, in his official capacity as Administrator of the TSA (collectively, the "appellees"). In their complaint, appellants submit that they are "regular air travelers" who have been subjected to both AIT scanners and enhanced pat-downs during recent trips around the country, and that they foresee being subjected to the same procedures in future planned trips. They claim that AIT scanners "produce clear images of the nude body of the searched party" and that the TSA has provided them with no guarantee that the generated images will not be saved. They thus argue that the TSA's use of these screening procedures violates their rights under the Fourth

-4-

Amendment against unreasonable searches and seizures, as well as their right to privacy and interstate travel. Their complaint seeks a declaratory judgment that the new screening procedures are unconstitutional and a permanent injunction against the use of such techniques "without reasonable suspicion or probable cause."

The appellees moved to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction, arguing that the 2010 SOP detailing the new screening measures was an "order" under 49 U.S.C. § 46110, and therefore only reviewable by federal courts of appeals.[1] The district court agreed that the SOP was an order subject to review only by the federal courts of appeals and determined that appellants' constitutional claims were inescapably intertwined with the 2010 SOP. Finding that the application of § 46110 to the 2010 SOP would not deny appellants meaningful review, and that they could properly bring their claims before this

---

[1] Said statute provides as follows:

[A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security with respect to security duties and powers designated to be carried out by the Under Secretary or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator) . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

court, the district court dismissed appellants' complaint. Appellants timely appealed from this decision.

After the appeal was docketed and the parties briefed the jurisdictional issue, we entered an order scheduling the case for oral argument and directing the parties to also brief the merits of appellants' constitutional claims. We took no stance on the jurisdictional question presented by the appeal. In its brief addressing the merits, dated December 26, 2012, appellees informed us that the TSA had recently developed privacy software for millimeter-wave scanners "that eliminates passenger-specific images and instead indicates the location of potential threats on [a] generic human figure." Appellees claimed that this software, called "Automatic Target Recognition" (ATR),[2] had been installed on "all" millimeter-wave scanners currently being used for passenger screening.

A few months later, on March 19, 2013, appellees informed us, via a Federal Rule of Appellate Procedure 28(j) letter, that Rapiscan, the manufacturer of the backscatter scanners, had "been unable to develop effective ATR software for use in its backscatter machines," and that as a result, TSA had decided to terminate its contract with them. This move was the

---

[2] 49 U.S.C. § 44901(l)(1)(C) defines ATR as "software installed on an advanced imaging technology that produces a generic image of the individual being screened that is the same as the images produced for all other screened individuals."

-6-

result of a new law passed by Congress, the FAA Modernization and Reform Act of 2012, Pub. L. No. 112-95, § 26, 126 Stat. 11, 132 (Feb. 14, 2012), which required the TSA to ensure that all AIT scanners being used for passenger screening be equipped with ATR software by June 1, 2012, a deadline which was further extended by the TSA to May 31, 2013.  An attachment to appellees' Rule 28(j) letter also stated that "[a]ll Rapiscan AIT units currently operational at checkpoints around the country, as well as those stored at the TSA Logistics Center, will be removed by Rapiscan at their expense and stored until they can be redeployed to other mission priorities within the government."  As a result, appellees represented that all backscatter scanners were going to be removed from passenger screening checkpoints by May 31, 2013, leaving only millimeter-wave scanners equipped with ATR technology in their stead.

Given the TSA's representation that appellants, at least in the context of air travel, are no longer to be subjected to scanning equipment that generates revealing images of their bodies -- thus considerably allaying their privacy concerns -- we issued an order requesting the parties to express themselves as to whether this appeal, or any portion thereof, became moot.  The order also requested the parties to address the issue of whether the information contained in appellees' March 19, 2013 letter, regarding the TSA's plans to remove all backscatter scanners from

checkpoints, could be appropriately considered by the court at this time. After the parties briefed their positions on these issues, on June 17, 2013, the government filed another Rule 28(j) letter informing us that the TSA had indeed removed all backscatter scanners from passenger screening checkpoints, and that, as of May 16, 2013, "all AIT units deployed by TSA are equipped with ATR capability."

## II.  Discussion

This appeal calls on us to resolve two jurisdictional issues: (1) whether the 2010 SOP is an "order" under 49 U.S.C. § 46110, such that jurisdiction did not lie with the district court; and (2) whether, given recent events, this appeal has become moot, such that we are no longer with jurisdiction to entertain it under Article III of the United States Constitution. Because we do in fact conclude that this appeal is moot and that entering into an analysis on whether the 2010 SOP is an "order" under § 46110 would serve no useful purpose, we will bypass that issue altogether, and proceed to explain our reasoning.

Although an appellate court must normally "satisfy itself both of its own subject-matter jurisdiction and of the subject-matter jurisdiction of the trial court before proceeding further," Royal Siam Corp. v. Chertoff, 484 F.3d 139, 142 (1st Cir. 2007), both Supreme Court and circuit precedent allow us to sidestep certain jurisdictional issues in select circumstances.

-8-

The Supreme Court in Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 94 (1998), established the general principle that federal courts are "required to determine whether Article III jurisdiction exists prior to proceeding to the merits of the case." United Seniors Ass'n, Inc. v. Philip Morris USA, 500 F.3d 19, 23 (1st Cir. 2007). In Parella v. Retirement Board of Rhode Island Employees' Retirement System, 173 F.3d 46, 57 (1st Cir. 1999), we noted that the justices in Steel Co. distinguished between jurisdictional issues that arise under Article III and those that arise under federal statutes; "the former should ordinarily be decided before the merits, but the latter need not be." Id. Additionally, in subsequent cases we have held that appellate courts remain free to bypass problematic jurisdictional issues provided those issues do not implicate Article III's "case or controversy" requirement. See, e.g., Kelley v. Marcantonio, 187 F.3d 192, 197 (1st Cir. 1999); Royal Siam Co., 484 F.3d at 144; Aponte-Rosario v. Acevedo-Vilá, 617 F.3d 1, 6 (1st Cir. 2010).

The question whether the district court possessed jurisdiction to hear this case under § 46110 is plainly an issue of statutory jurisdiction which we may bypass. This issue does not involve Article III's requirement of a "case" or "controversy," and even if we were to resolve it in the government's favor, this court would still have jurisdiction to hear the case in the first instance. The question of whether this case is moot, however, does

call into question our power to hear this case under Article III and we are thus prohibited from sidestepping it under the above case-law. Because we find that this case is moot and that we are without Article III jurisdiction to entertain it, there is little reason for us to address the statutory jurisdiction issue. We thus proceed to explain why the instant case must be dismissed on mootness grounds.[3]

Our first line of inquiry is to decide whether we are able to take judicial notice of the TSA's consummated decision to remove all backscatter machines from passenger screening checkpoints. Appellants note that "it is inappropriate to consider evidence relating to contested issues of fact when that evidence is submitted in a 28(j) letter." In this case, the appellees introduced new facts concerning the TSA's plans to remove all non-ATR scanners from security checkpoints via its March 19, 2013 Rule 28(j) letter, and, in addition, appellees filed another Rule 28(j) letter dated June 17, 2013, stating that they had in fact removed said scanners from all checkpoints. Appellees maintain that their letter was filed pursuant to the Supreme Court's mandate directing attorneys "to bring to the federal tribunal's attention '_without_

---

[3] We must recognize that several courts around the country have already resolved the statutory jurisdiction question in favor of the government. See, e.g., Blitz v. Napolitano, 700 F.3d 733, 739-40 (4th Cir. 2012); Roberts v. Napolitano, 463 Fed. App'x 4 (D.C. Cir. 2012); Corbett v. United States, 458 Fed. App'x 866, 871 (11th Cir. 2012) (all holding that courts of appeals have exclusive jurisdiction to hear challenges against the 2010 SOP).

delay,' facts that may raise a question of mootness." Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.23 (1997) (citing Bd. of License Comm'rs of Tiverton v. Pastore, 469 U.S. 238, 240 (1985))(emphasis in original).

Although appellants note that Rule 28(j) letters may not normally be used to submit new evidence to an appeals court, they do recognize that in United States v. Brown, 631 F.3d 573, 580 (1st Cir. 2011), we considered new facts presented in one such letter when those facts were verified and relevant to the question of mootness. Although appellants claim they are not bound to accept the new facts presented by appellees in their Rule 28(j) letters, they are nevertheless willing to accept as true the following facts: (1) "that the government presently intends to stop using the non-ATR-equipped backscatter scanners in U.S. airports for passenger screening after June 1, 2013," and (2) "that the backscatter scanners will be redeployed outside of airports." Because both parties agree that, as of June 1, 2013, appellants will no longer be subjected to body scanners that are not equipped with ATR technology at airport checkpoints, we find no difficulty in taking judicial notice of the facts presented in the government's Rule 28(j) letters.[4] Having determined that these new

---

[4]  In addition, in a recent notice of proposed rulemaking, the TSA manifested its intent to remove all non-ATR-equipped scanners from security checkpoints by June 1, 2013.  We may also take judicial notice of this fact.  Baur v. Veneman, 352 F.3d 625, 638 n.12 (2d Cir. 2003) ("[T]he court of appeals may take judicial notice of a

-11-

developments are appropriately before this court, we now proceed to assess whether they have rendered appellants' claims moot.

Article III of the Constitution confines our jurisdiction to those claims that involve actual "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1.  It follows that federal courts "lack constitutional authority to decide moot questions"; the fact that a live controversy existed when the plaintiff brought suit is not enough.  Barr v. Galvin, 626 F.3d 99, 104 (1st Cir. 2010). "When a case is moot -- that is, when the issues presented are no longer live or when the parties lack a generally cognizable interest in the outcome -- a case or controversy ceases to exist, and dismissal of the action is compulsory."  Maher v. Hyde, 272 F.3d 83, 86 (1st Cir. 2001) (quoting Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001)).

This case began with appellants challenging the TSA's use of both millimeter-wave and backscatter scanners, as well as the use of enhanced pat-downs as a mandatory alternative method of screening for those passengers who opted out of AIT scanning.  Once appellees informed us of their plans to equip millimeter-wave scanners with ATR technology, the appellants abandoned their claims against the use of such scanners, and instead maintained that backscatter scanners should also be equipped with ATR technology. However, now that appellees have informed us that the backscatter

proposed rule published in the Federal Register . . . .").

scanners have been removed from security screening checkpoints, and that appellants will no longer be subjected to body scanners that depict revealing images of their bodies, it is apparent that the remainder of appellants' claims have become moot.[5]

Appellants seek to overcome the mootness issue by arguing that the kind of searches perpetrated by the government in this case are "capable of repetition, yet evading review." S. Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911). They maintain that, although the government promised to remove all backscatter scanners from passenger screening checkpoints, the government also intends to redeploy such scanners to "other mission priorities within the government." Appellants claim that it is therefore "reasonable to expect that we could at some point in the future be scanned again," because "as attorneys and residents of San Francisco and Washington, D.C., we are no strangers to mass transit and government buildings." For the reasons that follow, we are not persuaded by appellants' arguments.

The "capable of repetition, yet evading review" exception to the mootness doctrine is well established, although it is construed narrowly. Barr, 626 F.3d at 105-06. According to the Supreme Court, the party arguing for the exception has the burden

---

[5]  At oral argument, appellant Redfern recognized that once all backscatter scanners were removed from all checkpoints, appellants would no longer have a free-standing claim against TSA's use of enhanced pat-downs, as they do not intend to opt out of ATR-equipped millimeter-wave scanners.

of showing that "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation or a demonstrated probability that the same complaining party will be subject to the same action again." FEC v. Wis. Right To Life, Inc., 551 U.S. 449, 462 (2007) (citing Spencer v. Kemna, 523 U.S. 1, 17 (1998)) (internal quotation marks omitted); see also Barr, 626 F.3d at 105-06. In this case, even if we assume -- without examining the issue -- that appellants could show the requisite short timing for the exception to apply, they would clearly fail to meet their burden as to the second prong of the test: that there be a reasonable expectation or a demonstrated probability that they will be subjected to non-ATR-equipped body scanners in the future.

Appellants argue that, although they do not yet know the precise locations in which the government will choose to redeploy the backscatter scanners, it is reasonable to suppose that they will be scanned again in the future. However, the basis for their argument rests on the threadbare assertion that, because they reside in major metropolitan areas, they are "no strangers to mass transit and government buildings," and therefore are likely to confront backscatter scanners again. This statement is entirely speculative and we find that it is insufficient to prevent this case from becoming moot. See Doe No. 1 v. Reed, 697 F.3d 1235, 1239 (9th Cir. 2012) ("A moot case cannot be revived by alleged

-14-

future harm that is so remote and speculative that there is no tangible prejudice to the existing interests of the parties." (internal quotation marks omitted)); Protestant Mem'l Med. Ctr., Inc. v. Maram, 471 F.3d 724, 732 (7th Cir. 2006) ("[P]ure speculation as to future injury is not sufficient to meet the exception to mootness." (internal quotation marks omitted)).

The truth of the matter is that the government has not revealed where it plans to redeploy the decommissioned backscatter machines, or whether it intends to reuse them on the traveling public at all. There are a myriad of possibilities and it may very well be that appellants will never be subjected to the backscatter machines again. "[I]t is the original plaintiff, rather than some other party, who must bear the onus of repeated exposure to the challenged conduct in order to meet the 'capable of repetition' standard." Ramírez v. Sánchez-Ramos, 438 F.3d 92, 101 (1st Cir. 2006). We thus find that, on this record, appellants have failed to demonstrate that they remain at risk for the harm about which they complain, namely, being scanned with non-ATR-equipped backscatter machines in the future.

As appellants have been unable to establish the applicability of the "capable of repetition" exception, it is clear to us that no live case or controversy remains and that their claims against the use of the backscatter machines must be dismissed as moot. Ramírez, 438 F.3d at 100 (noting that, where

"intervening events have wiped the slate clean, the case has become moot.").

### III. Conclusion

For the foregoing reasons, we vacate the judgment below and remand with instructions to dismiss the case as moot. The parties shall bear their own costs.

**<u>Vacated and Remanded</u>**.