# United States Court of Appeals
## For the First Circuit

No. 20-9009

IN RE: LUIS MANUEL RUIZ RUIZ, d/b/a Lowy Farm,

Debtor,

MILK INDUSTRY REGULATORY OFFICE
OF THE COMMONWEALTH OF PUERTO RICO, a/k/a ORIL,

Appellant,

v.

LUIS MANUEL RUIZ RUIZ, d/b/a Lowy Farm,

Appellee.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

Before

Barron, Chief Judge,
Lynch and Howard, Circuit Judges.

Edward W. Hill Tollinche for appellant.
Homel A. Mercado-Justiniano for appellee.

October 4, 2023

**PER CURIAM**. The Milk Industry Regulatory Office of the Commonwealth of Puerto Rico (known by its Spanish acronym "ORIL") challenges two bankruptcy court orders: one granting Luis Manuel Ruiz Ruiz permission to enter a lease in the course of his bankruptcy proceedings, and one denying ORIL's motion for reconsideration of that permission. The Bankruptcy Appellate Panel for the First Circuit (the "BAP") affirmed the bankruptcy court orders on the merits. We now dismiss ORIL's appeal as moot. Determining that the action became moot prior to the BAP's judgment, we vacate that judgment. Concluding that ORIL contributed to the mootness, we leave the bankruptcy court orders intact.

## I.

ORIL, a subdivision of the Puerto Rico Department of Agriculture, is tasked with regulating Puerto Rico's commercial milk industry. See Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 467 (1st Cir. 2009). Among other duties, ORIL issues licenses to dairy farmers who produce raw milk and sell that milk to processing plants. Each license assigns a "quota" representing the amount of milk that a dairy farmer can produce and sell every fourteen days. See P.R. Laws Ann. tit. 5, § 1126(b)-(c), (f). Prior to the events at issue in this case, Ruiz had a license from ORIL to produce a quota of over 55,000 liters of milk.

In June 2015, Ruiz filed a Chapter 12 bankruptcy petition[1] in the U.S. Bankruptcy Court for the District of Puerto Rico. In August 2018, while Ruiz's bankruptcy proceedings were still ongoing, ORIL suspended Ruiz's milk license on a "regulatory presumption of milk trafficking"[2] and filed an administrative complaint seeking revocation of the license. In October 2018, ORIL agreed to conditionally reinstate the milk license while ORIL's administrative action proceeded. The bankruptcy court entered a corresponding order "re-activat[ing]" Ruiz's milk license "on a conditional basis . . . subject to a final judgment in the administrative-agency proceedings."

Later that month, after holding evidentiary hearings, ORIL revoked Ruiz's license and ordered him to "dispose[] of" his milk quota. After ORIL denied reconsideration in early 2019, Ruiz sought review of ORIL's decision in the Puerto Rico Court of Appeals. Ruiz also filed a motion in the bankruptcy court requesting permission to lease 53,000 liters of his milk quota to a willing lessee for a term of six months, so that Ruiz could

---

[1] Chapter 12 of the Bankruptcy Code "allow[s] farmer debtors with regular annual income to adjust their debts." Hall v. United States, 566 U.S. 506, 509 (2012).

[2] In particular, ORIL claimed that its inspections revealed that Ruiz had made "milk deliveries . . . well above his production capacity . . . . [and] far exceed[ing] his herd's ability to produce the milk," thus "trigger[ing] a regulatory presumption of milk trafficking."

"obtain an income source out of which he c[ould] pay the Chapter 12 [t]rustee." Ruiz provided electronic notice of this motion to ORIL, but ORIL filed no objection to the motion.

The bankruptcy court granted Ruiz's motion and approved the lease on February 15, 2019, noting that ORIL had "no[t] oppos[ed]" the motion despite having received "[d]ue notice" of it. Ruiz and a lessee then executed a lease for the quota, and on February 20, 2019, Ruiz submitted the lease to ORIL for registration.

On February 27, 2019, ORIL filed a motion with the bankruptcy court requesting reconsideration of the order approving the lease. This was the first time ORIL had expressed any opposition to the lease. ORIL argued that, despite Ruiz's pending appeal in the Puerto Rico Court of Appeals, Ruiz could not lawfully lease his milk quota because he no longer had an active license, and that the lease of 53,000 liters exceeded the maximum leasable amount under Puerto Rico law. On March 8, 2019, the bankruptcy court ordered ORIL to further explain its position and to "show cause why its motion for reconsideration should not be denied for failure to object to [Ruiz's] motion requesting leave to lease milk quota." ORIL attempted to explain that it had not opposed Ruiz's motion because it had believed that the bankruptcy court would deny the motion due to ORIL's having revoked Ruiz's milk license.

The bankruptcy court denied ORIL's motion for reconsideration on April 15, 2019, noting that ORIL had "failed to promptly object" to Ruiz's motion seeking to lease the quota. Observing that Ruiz's appeal of ORIL's revocation of his license was still pending in the Puerto Rico Court of Appeals, the bankruptcy court concluded that Ruiz was "authorized to use the milk license" on a conditional basis until he "exhaust[ed] his appeal rights."

ORIL then appealed both orders of the bankruptcy court -- i.e., the order approving the lease and the order denying reconsideration -- to the BAP. ORIL did not request a stay of the bankruptcy court orders pending appeal.

While ORIL's appeal was pending before the BAP, two noteworthy events occurred. First, the six-month lease executed by Ruiz and the lessee expired on or about August 20, 2019. According to Ruiz -- and uncontested by ORIL during the course of this appeal -- ORIL had never registered the lease and thus had prevented Ruiz and the lessee from ever actually implementing it. Second, Ruiz exhausted his appeals of ORIL's revocation of his milk license in the Puerto Rico court system, to no avail: the Puerto Rico Court of Appeals affirmed the revocation order in December 2019, and the Supreme Court of Puerto Rico denied review in February 2020 and denied reconsideration in May 2020.

The BAP -- on June 10, 2020, after requesting and receiving supplemental briefing from the parties regarding the action's potential mootness -- affirmed both of the bankruptcy court orders. Milk Indus. Regul. Off. v. Ruiz Ruiz (In re Ruiz Ruiz), No. PR 19-023, 2020 WL 3264985, at *1 (B.A.P. 1st Cir. June 10, 2020) (unpublished decision). The BAP noted that "the record triggered some mootness concerns" because the lease "was never implemented and expired by its terms." Id. at *3. Despite these concerns, see id. at *3-4, the BAP purported to "bypass" the question of whether the action was moot and thereby "advance to a discussion of the merits," id. at *4. The BAP then rejected ORIL's challenges on the merits. See id. at *4-7.

After the BAP denied ORIL's motion for panel rehearing, ORIL timely appealed to this court.

## II.

### A.

Despite the BAP's discussion of this action's potential mootness, the appellant, ORIL, has briefed only the merits of the action to us. Ruiz's responsive brief also does not discuss mootness. Nevertheless, "[b]efore turning to the merits, we must 'determine as a threshold matter that we have jurisdiction.'" Moore v. Harper, 143 S. Ct. 2065, 2076 (2023) (quoting Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 178 (1988)).

Article III of the Constitution restricts our jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. "As '[a] corollary to this case-or-controversy requirement,' there must exist a dispute 'at all stages of review . . . .'" Moore, 143 S. Ct. at 2076 (quoting Genesis HealthCare Corp. v. Symczyk, 569 U.S. 66, 71 (2013) (alteration in original) (internal quotation marks omitted)). An action becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," such that "it [is] impossible for the court to grant any effectual relief whatever to a prevailing party." Harris v. Univ. of Mass. Lowell, 43 F.4th 187, 191-92 (1st Cir. 2022) (first quoting Chafin v. Chafin, 568 U.S. 165, 172 (2013); and then quoting Gulf of Me. Fishermen's All. v. Daley, 292 F.3d 84, 88 (1st Cir. 2002)).

Because a "case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III,' and is outside the jurisdiction of the federal courts," United States v. Sanchez-Gomez, 138 S. Ct. 1532, 1537 (2018) (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)), federal courts lack authority to "bypass [the mootness] inquiry when the record reveals mootness may be an issue," Harris, 43 F.4th at 191 n.7; see Redfern v. Napolitano, 727 F.3d 77, 82-84 (1st Cir. 2013) ("The question of whether [a] case is moot . . . call[s] into question our power to hear th[e] case under Article

- 7 -

III and we are thus prohibited from sidestepping it . . . . 'When a case is moot[,] . . . dismissal of the action is compulsory.'" (quoting Maher v. Hyde, 272 F.3d 83, 86 (1st Cir. 2001))). Moreover, because "[e]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also [of] that of the lower courts in a cause under review," Arizonans for Off. Eng. v. Arizona, 520 U.S. 43, 73 (1997) (internal quotation marks omitted) (quoting Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)), we must assure ourselves that the mooting event did not occur prior to a decision below, see id. ("[When the lower federal court] lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." (alterations in original) (quoting Bender, 475 U.S. at 541)).

ORIL's challenge to the bankruptcy court orders became moot no later than approximately August 20, 2019, when the lease of Ruiz's milk quota expired. See ACLU of Mass. v. U.S. Conf. of Cath. Bishops (ACLUM), 705 F.3d 44, 53 (1st Cir. 2013) ("It is ordinarily true that a challenge to a contract becomes moot upon that contract's expiration."). ORIL has never pursued damages based on Ruiz's execution of the lease; it has sought only to reverse the bankruptcy court order approving the lease. After the lease expired, ORIL retained no concrete interest in seeking that

- 8 -

reversal.  See id. at 53 ("Once a contract has expired, . . . if no damages are sought, the parties usually do not have a legally cognizable interest in the case's outcome. . . .  [T]here is no ongoing conduct left for the court to enjoin. . . .  [And] [w]ith limited exceptions, not present here, issuance of a declaratory judgment deeming [the contract] illegal is also not permissible as it would be merely advisory.") (citations omitted); Harris, 43 F.4th at 192-93 (noting that "[a]lthough 'a claim for damages will keep a case from becoming moot where equitable relief no longer forms the basis of a live controversy,'" the appellants had not made "any specific request for damages" (quoting Thomas R.W. v. Mass. Dep't of Educ., 130 F.3d 477, 480 (1st Cir. 1997))).

That is especially so here because the lease was never actually implemented.  See Marek v. Rhode Island, 702 F.3d 650, 652, 654 (1st Cir. 2012) (finding an action moot where a development permit expired and the proposed development "ha[d] not gone forward," rendering the "project . . . a dead letter" that "was no longer authorized").  Indeed, the action may have become moot even earlier, upon ORIL's decision to not register the lease in spite of the bankruptcy court's denial of reconsideration of its approval of the lease.  In any event, the action became moot well before the BAP's June 10, 2020, decision affirming the bankruptcy court orders, so the BAP should have dismissed the action without reaching the merits.  See, e.g., Arizonans, 520

- 9 -

U.S. at 48 (noting that the lower court "had no warrant to proceed" to the merits where the "case had lost the essential elements of a justiciable controversy"); Redfern, 727 F.3d at 82 ("prohibit[ing]" federal courts "from sidestepping" questions of mootness).

## B.

"'Since the controversy at issue is not live, and the requested relief is not available, [ORIL] must rely on an exception to the mootness doctrine' to save [its] appeal from dismissal." Harris, 43 F.4th at 194 (quoting ACLUM, 705 F.3d at 54). Two such exceptions merit brief discussion.

## 1.

ORIL argued to the BAP, but not in its brief to us, that the action falls within the exception for controversies that are "capable of repetition, yet evading review." Kingdomware Techs., Inc. v. United States, 579 U.S. 162, 170 (quoting Spencer v. Kemna, 523 U.S. 1, 17 (1998)). That exception applies only if "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." Sanchez-Gomez, 138 S. Ct. at 1540 (quoting Turner v. Rogers, 564 U.S. 431, 439-40 (2011) (alterations omitted)). "[O]nly in exceptional situations" does an action meet this exception, Kingdomware Techs., 579 U.S. at 170

(quoting Spencer, 523 U.S. at 17), and the "party arguing for the exception has the burden of showing" its applicability, Redfern, 727 F.3d at 84.

Even were we to assume, dubitante, that ORIL "could show the requisite short timing for the exception to apply," ORIL "clearly [has] failed to meet [its] burden as to the second prong of the test." Id. That prong "requires a 'reasonable expectation' or a 'demonstrated probability' that 'the same controversy will recur involving the same complaining party.'" FEC v. Wis. Right to Life, Inc., 551 U.S. 449, 463 (2007) (quoting Murphy v. Hunt, 455 U.S. 478, 482 (1982) (per curiam)). "Notably, this requirement cannot rest on '[t]he possibility that other parties may subsequently bring a similar claim'"; rather, the expectation of repetition "must be specific to [ORIL]." Harris, 43 F.4th at 195 (quoting Thomas R.W., 130 F.3d at 480).

ORIL has demonstrated no such reasonable expectation. It offers no reason to believe that Ruiz, or any other milk producer, will imminently seek approval of a short-term lease of a large quantity of milk quota after license revocation. See id. ("[A]voiding mootness cannot rest on 'speculation' about some future potential event." (quoting Pietrangelo v. Sununu, 15 F.4th 103, 106 (1st Cir. 2021))). Ruiz seems particularly unlikely to do so, given that he has now exhausted his appeals of ORIL's revocation of his license: even under the bankruptcy court's

- 11 -

interpretation of ORIL's agreement to conditionally reinstate the license, the license would endure only until the end of that appeals process.[3] "[I]n the improbable event" that Ruiz seeks approval of another lease of milk quota, that request will be adjudicated in markedly different circumstances from those underlying the instant dispute. Marek, 702 F.3d at 655. Further, ORIL "would be able to mount a challenge" by objecting to any such request, which it failed to do here. Id.

**2.**

At oral argument, when this court raised the question of mootness, ORIL presented a new argument which it has never briefed. Noting that Ruiz had recently filed an adversary complaint[4] against ORIL seeking damages based on ORIL's failure to register the lease, ORIL claimed to suffer an "ongoing injury" based on its potential "exposure to liability" from that complaint. ORIL posited that if this court upholds the bankruptcy court orders approving the lease

---

[3] Notably, the appeals process concluded prior to the BAP's decision: the Supreme Court of Puerto Rico denied reconsideration of its denial of review in May 2020, and the BAP affirmed the bankruptcy court orders in June 2020. So even at the time of the BAP's decision, ORIL had no stronger claim to the applicability of the exception than it has now.

[4] "[A]n adversary proceeding is a subsidiary lawsuit within the larger framework of a bankruptcy case." Botelho v. Buscone (In re Buscone), 61 F.4th 10, 16 n.1 (1st Cir. 2023) (quoting Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 872 F.3d 57, 63 (1st Cir. 2017)).

- 12 -

and denying reconsideration, then ORIL could be subject to liability in the pending adversary proceeding. This oral contention appears to be meant to invoke the exception to mootness for controversies that may engender "collateral consequences" for a party. ConnectU LLC v. Zuckerberg, 522 F.3d 82, 88 (1st Cir. 2008).

"There is a recognized defense to a claim of mootness in the appellate context when a party can demonstrate that a lower court's decision, if allowed to stand, may have collateral consequences adverse to its interests." Id. "This exception has been applied traditionally in criminal cases because a federal court can, as a general matter, 'presume that [collateral consequences] exist' stemming from an unconstitutional conviction." Rivera-Rivera v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 16 F.4th 954, 962-63 (1st Cir. 2021) (alteration in original) (quoting Sibron v. New York, 392 U.S. 40, 55 (1968)). But we also found the exception to apply in the civil context in ConnectU LLC v. Zuckerberg. See 522 F.3d at 88-89. There, we noted that "collateral consequences may be found in the prospect that a judgment will affect future litigation or administrative action." Id. at 89 (quoting 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3533.3 (2d ed. 1984)). Although "collateral consequences that are remote or speculative will not inoculate an appeal against a

- 13 -

finding of mootness," id.; see also In re Fin. Oversight & Mgmt. Bd. for P.R., 16 F.4th at 963 (noting that "inchoate and barely articulated [collateral] consequences that . . . [are] too diffuse and unformed to supply a basis for finding a substantial controversy of sufficient immediacy" cannot negate mootness), a judgment that would "ha[ve] a concrete (and potentially devastating) impact on [another] action . . . . suffices to defuse a claim of mootness," ConnectU, 522 F.3d at 88-89.

ORIL has waived its argument that the case is not moot under this exception. See Conduragis v. Prospect Chartercare, LLC, 909 F.3d 516, 518 n.2 (1st Cir. 2018) ("[E]xcept in extraordinary circumstances, arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived." (quoting United States v. Pulido, 566 F.3d 52, 60 n.4 (1st Cir. 2009))); cf. ACLUM, 705 F.3d at 56 (finding that a party's "appellate brief ha[d] waived the issue" of the applicability of the exception to mootness for controversies that are capable of repetition, yet evading review, by "addressing the exception only once in a footnote"). ORIL chose to completely ignore the issue of mootness in all of its briefing. It is true that Ruiz filed his adversary complaint after briefing to this court had finished, but ORIL knew of his intention to do so much earlier: ORIL had ample notice of Ruiz's argument because Ruiz, in response to the BAP's request for supplemental briefing regarding

- 14 -

mootness, expressly stated his intention to file the adversary complaint, contending that the action was not moot because "if [the bankruptcy court orders are] upheld by th[e] BAP, . . . [Ruiz] will be able to seek a remedy for ORIL's violation of a valid [o]rder from the [b]ankruptcy [c]ourt . . . [via ORIL's] unilateral action of not registering the lease." Nevertheless, ORIL's briefs made no mention of this to either this court or the BAP. We thus cannot conclude that "extraordinary circumstances" exist to excuse ORIL's waiver.[5] Conduragis, 909 F.3d at 518 n.2 (quoting Pulido, 566 F.3d at 60 n.4).

## III.

The issue remains of determining the proper disposition of this action upon a finding of mootness.

At the outset, it is clear that we must vacate the BAP's judgment. Because the mooting event occurred prior to that

---

[5] We note -- without deciding -- that a party seeking to invoke the "collateral consequences" exception in a civil case may bear the burden of demonstrating its applicability. See United States v. Juv. Male, 564 U.S. 932, 936 (2011) (noting, in the criminal context, that courts "presume[] the existence of collateral consequences" when a defendant whose sentence has expired challenges the underlying conviction, but that "no such presumption applies" when a defendant challenges the expired sentence); Spencer, 523 U.S. at 7-14 (noting, in the habeas context, that a petitioner who is no longer incarcerated bears the burden of demonstrating that collateral consequences stem from a prior parole revocation); cf. Redfern, 727 F.3d at 84 (noting that the "party arguing for the exception [for controversies that are capable of repetition, yet evading review] has the burden of showing" its applicability).

- 15 -

judgment, the BAP "had no warrant to proceed" as it did and resolve the case on the merits. Arizonans, 520 U.S. at 48; see, e.g., 13C C. Wright & A. Miller, Federal Practice and Procedure § 3533.10 (3d ed. 2023) ("No difficulty is encountered if an action is moot at the time of the lower court's decision -- any decision on the merits is vacated, even if the [lower] court both ruled that the action was moot and alternatively addressed the merits."); Scruggs v. Lowman (In re Scruggs), 392 F.3d 124, 129 (5th Cir. 2004) ("[W]hen a matter on appeal is determined to have become moot, not merely prior to or during the appeal but prior to the date of the order being appealed from, we must dismiss as moot the appeal before us and vacate . . . the ruling from which the appeal was sought.").

That still leaves the proper disposition with respect to the two bankruptcy court orders on appeal -- i.e., the February 15, 2019, order approving the lease and the April 15, 2019, order denying reconsideration of that approval. We turn now to that issue.

When a civil case becomes moot pending appeal, the "established practice . . . is to reverse or vacate the judgment below and remand with a direction to dismiss." United States v. Munsingwear, 340 U.S. 36, 39 (1950). "That procedure clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through

- 16 -

happenstance." Id. at 40. "The equitable remedy of vacatur ensures that 'those who have been prevented from obtaining the review to which they are entitled [are] not . . . treated as if there had been a review.'" Camreta v. Greene, 563 U.S. 692, 712 (2011) (alteration and omission in original) (quoting Munsingwear, 340 U.S. at 39); see U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 25 (1994) ("A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment.").

This practice, however, is "not exceptionless." Camreta, 563 U.S. at 712; see Azar v. Garza, 138 S. Ct. 1790, 1793 (2018) ("[N]ot every moot case will warrant vacatur . . . ."). Although vacatur is justified where mootness either occurs "by happenstance" or "results from unilateral action of the party who prevailed below," it is not warranted where mootness "results from settlement" or when "the party seeking relief from the judgment below caused the mootness by voluntary action." Bancorp, 513 U.S. at 24-25, 25 n.3.

Accordingly, after concluding that an action is moot, we must determine on which "side of the line" the action falls. Alvarez v. Smith, 558 U.S. 87, 95 (2009). Ultimately, the decision of whether to vacate is "rooted in equity" and "turns on 'the conditions and circumstances of the particular case.'" Azar, 138

- 17 -

S. Ct. at 1792 (quoting United States v. Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft, 239 U.S. 466, 478 (1916)); see Bancorp, 513 U.S. at 24 ("[W]e have disposed of moot cases in the manner 'most consonant to justice . . . in view of the nature and character of the conditions which have caused the case to become moot.'" (omission in original) (internal quotation marks omitted) (quoting Hamburg-Amerikanische, 239 U.S. at 478)); 28 U.S.C. § 2106 (allowing a reviewing court to "direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances" (emphasis added)).

We note that a finding of mootness "may require multiple vacaturs in the bankruptcy context," because "three, not two, court systems are involved." Pilate v. Burrell (In re Burrell), 415 F.3d 994, 1000 (9th Cir. 2005) (quoting Dunlavey v. Ariz. Title Ins. & Tr. Co. (In re Charlton), 708 F.3d 1449, 1454 (9th Cir. 1983)); see 28 U.S.C. § 158(a)-(b) (providing that an appeal from a bankruptcy court order is heard by either a district court or a bankruptcy appellate panel prior to the circuit court of appeals). In appropriate circumstances, as described above, we thus may vacate "both the judgments of the district court or the BAP and the bankruptcy court." In re Burrell, 415 F.3d at 1000; accord, e.g., Neidich v. Salas, 783 F.3d 1215, 1216 (11th Cir. 2015); In

re Biggs, 271 F. App'x 286, 289 (3d Cir. 2008) (unpublished decision).

We conclude that the "balance of equities" weigh against vacatur of the bankruptcy court orders here. Azar, 138 S. Ct. at 1793. Several factors inform this conclusion. First, ORIL never sought a stay pending appeal of the bankruptcy court orders -- a request that, had it been granted, could have forestalled the mootness of this action. See, e.g., Cook v. Fletcher (In re Cook), 730 F.2d 1324, 1326 (9th Cir. 1984) ("[T]he appellants' failure to seek a stay of the bankruptcy court's orders supports our conclusion that this appeal is moot."); cf. 13B Wright & Miller, supra, § 3533.2.3 (noting that in bankruptcy appeals, particularly those involving sales and leases of property, "the appellant has a high obligation to seek a stay pending appeal, even if the chances of success seem dim" and "[a] failure to seek a stay increases concern that relief may be inequitable").[6] That failure

---

[6] We note that obtaining a stay could have protected ORIL from the risk of statutory mootness stemming from implementation of the lease. See 11 U.S.C. § 363(m) ("The reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, . . . unless such authorization and such sale or lease were stayed pending appeal." (emphasis added)); see also, e.g., Mission Prod. Holdings, Inc. v. Old Cold LLC (In re Old Cold LLC), 879 F.3d 376, 382-88 (1st Cir. 2018) (discussing this provision). Although statutory mootness is not implicated here because the lease was never implemented, we note that ORIL's failure to register the lease allegedly prevented that implementation. And ORIL's failure to seek a stay still

- 19 -

by ORIL does not stand alone.  Significantly, ORIL failed to timely object to Ruiz's motion requesting permission to enter the lease in the first place, and the bankruptcy court relied on that lack of objection.  It is abundantly clear that ORIL "slept on its rights" in several respects throughout the course of this litigation.  Munsingwear, 340 U.S. at 41.  Moreover, as Ruiz claims and ORIL does not contest, ORIL decided to not register the lease, and so prevented its implementation, even after the bankruptcy court denied reconsideration of the order approving the lease.[7] That choice contributed to this action's mootness because it minimized any concrete impact of the lease and ORIL's stake in challenging it.  See Bancorp, 513 U.S. at 24 (noting that vacatur is not warranted where "the party seeking relief from the judgment below caused the mootness by voluntary action").

---

contributed to the constitutional mootness of this action.  Cf. Rochman v. Ne. Utils. Serv. Grp. (In re Pub. Serv. Co. of N.H.), 963 F.2d 469, 472 (1st Cir. 1992) ("[T]he equitable and jurisdictional considerations underlying the mootness doctrine are interactive . . . .  Although in bankruptcy cases these concerns most often coincide in the context of transfers to good faith purchasers, we have acknowledged that the same principles 'pervade the Bankruptcy Code.'" (citations omitted) (first citing 11 U.S.C. § 363; and then quoting Anheuser-Busch, Inc. v. Miller (In re Stadium Mgmt. Corp.), 895 F.2d 845, 848 (1st Cir. 1990))).

[7]  We express no view on how ORIL's alleged failure to register the lease may impact the outcome of Ruiz's pending adversary complaint or other future litigation between the parties.  We note only that in the instant action, ORIL has not contested Ruiz's claim that ORIL chose to not register the lease, a choice which contributed to the action's mootness.

We emphasize that our analysis is confined to the "unique circumstances of this case." Azar, 138 S. Ct. at 1793. We do not hold, for example, that a party must always seek a stay in order to later request vacatur. Cf. Rochman v. Ne. Utils. Serv. Grp. (In re Pub. Serv. Co. of N.H.), 963 F.2d 469, 473 (1st Cir. 1992) ("The failure to obtain a stay is not sufficient ground for a finding of mootness."). But ORIL's actions, viewed cumulatively, have tilted the "balance of equities" against vacatur. Azar, 138 S. Ct. at 1793; see also Bancorp, 513 U.S. at 26 (noting that the "party seeking relief from the status quo of the . . . judgment [below]" must "demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur").

## IV.

For the foregoing reasons, we vacate the judgment of the BAP and remand to the BAP with instructions to dismiss ORIL's appeal as moot. The bankruptcy court orders will "remain[] extant." Harris, 43 F.4th at 195 (quoting Med. Pro. Mut. Ins. Co. v. Breon Lab'ys, Inc., 141 F.3d 372, 376 (1st Cir. 1998)). Costs are awarded to Ruiz.